## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LENA T.,**[1] | ) | |
| | ) | **No. 22 CV 2986** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **LELAND DUDEK, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | **March 17, 2025** |
| **Defendant.** | ) | |

### MEMORANDUM OPINION and ORDER

Lena T. seeks disability insurance benefits ("DIB") asserting that she is disabled by generalized anxiety disorder, panic disorder, PTSD, OCD, major depressive disorder, and polycystic ovary syndrome. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for benefits. For the following reasons, Lena's remand request is denied, and the Commissioner's decision is affirmed:

### Procedural History

Lena filed a DIB application in October 2019 claiming a disability onset date of November 28, 2018. (Administrative Record ("A.R.") 12, 71-82.) After her application was denied initially and upon reconsideration at the administrative level, (id. at 71-81, 83-101), she sought and was granted a hearing before an Administrative Law Judge ("ALJ"), (id. at 116-17, 148-64). Lena appeared with her attorney at a

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Lena's first name and last initial in this opinion to protect her privacy to the extent possible.

July 2021 telephonic hearing at which she and a vocational expert ("VE") testified.
(Id. at 28-92.) The ALJ ruled in September 2021 that Lena is not disabled. (Id. at
12-23.) The Appeals Council denied Lena's request for review, (id. at 1-5), making
the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923
F.3d 492, 496 (7th Cir. 2019). Lena then filed this action seeking judicial review, and
the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 9).

## Analysis

Lena argues that the ALJ erred by: (1) improperly evaluating the February
2021 opinion of her treating psychiatrist, Dr. George Miguel; (2) failing to account for
her moderate limitations in concentrating, persisting, and maintaining pace ("CPP")
and interacting with others when crafting her residual functional capacity ("RFC");
and (3) incorrectly assessing her subjective symptom statements. (See generally
R. 13, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether
the ALJ applied the correct legal standards and the decision has the support of
substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which
is "such relevant evidence as a reasonable mind might accept as adequate to support
a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and
citations omitted). This deferential standard precludes the court from reweighing the
evidence or substituting its judgment for the ALJ's, allowing reversal "only if the
record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation
and citation omitted). However, the ALJ's "analysis must say enough to enable a
review of whether the ALJ considered the totality of a claimant's limitations,"

2

*Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation . . . 'sufficient to allow [the] reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024). To warrant reversal, a claimant must do more than "nitpick the ALJ's order." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Instead, a claimant "must demonstrate with references to evidence why the ALJ's determinations lack substantial support." *Id.* Having considered the arguments and record under this standard, the court finds that remand is not warranted.

## A.    Subjective Symptom Assessment

The court begins with Lena's complaints about the ALJ's subjective symptom assessment because any errors identified on this issue may impact the other issues Lena raises in this case, including the RFC. In a July 2020 function report, Lena stated that she becomes "tired" and "overwhelmed and frustrated easily." (A.R. 256.) She has "panic attacks and need[s] to rest throughout the day a lot." (Id.) She cannot "focus on a task for long because [she] get[s] off track easily." (Id.) She lacks motivation and has difficulty "getting along with strangers." (Id.) And she "overthink[s]" and "worr[ies] about the unknown." (Id.)

An ALJ's symptom evaluation is entitled to great deference and may be reversed only where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688,

691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017).  That said, the court will not disturb an ALJ's subjective symptom evaluation that is logically based on specific findings and evidence in the record.  *See Murphy*, 759 F.3d at 815.

Lena asserts here that the ALJ erred when observing that despite her reports of "debilitating symptoms," her treating psychiatrist Dr. Miguel never recommended "more intensive treatment such as inpatient treatment, partial hospitalization or intensive outpatient program for mental health."  (R. 13, Pl.'s Mem. at 15 (citing A.R. 19).)  Lena is correct to the extent she argues that an ALJ may not draw a negative inference about conservative treatment without considering all relevant evidence, including the claimant's explanations and the medical record.  *See Kelly v. Colvin*, No. 12 CV 5580, 2014 WL 4388546, at *6 (N.D. Ill. Sept. 3, 2014) ("[R]emand is necessary where an ALJ's credibility determination is based on evidence cherry-picked from the record, selected without consideration of the context in which they appear." (quotation and citation omitted)).  But the ALJ in this case considered the record as a whole and supported her symptom analysis with substantial evidence. (A.R. 17-20.)

To be sure, the ALJ discussed Lena's reports that she suffers panic attacks four to five times a week, along with constant headaches, fatigue, excessive sweating, and feelings of frustration and being overwhelmed.  (Id. at 17.)  The ALJ also addressed the medical record, including an October 2019 emergency room visit during which

4

Lena presented with chest pain and was prescribed Xanax. (Id. at 18.) Shortly thereafter, her primary care provider diagnosed her with anxiety disorder and prescribed Zoloft in addition to Xanax, which she reported taking "sparingly."[2] (Id.) Lena began treatment with Dr. Miguel in May 2020, meeting with him six times through May 2021. (Id. at 19.) In June 2021 Dr. Miguel prescribed Risperdal for Lena's OCD symptoms and recommended therapy. (Id.) The ALJ noted that although Lena testified that she participated in weekly therapy with provider Megan Pfeifer for at least a year beginning in June 2020, when the state agency examiner contacted her, Pfeifer stated that she completed an intake form for Lena but never treated her. (Id. at 18.) And no treatment records document any therapy. (Id. at 19.) While the ALJ acknowledged Dr. Miguel's treatment records were handwritten and difficult to read, the ALJ found no mention of Lena's reports of severe medication side effects in the records. (Id. at 19-20.) The ALJ did note, however, that Lena reported to her primary care physician in January 2020 that Xanax caused fatigue, and the provider switched Lena to hydroxyzine. (Id. at 20.)

It was in this context that the ALJ stated that despite reports of disabling symptoms, Lena's treatment was generally conservative, with "the same medications being prescribed and an eventual recommendation for individual therapy." (Id. at 19.) Given the ALJ's consideration of all relevant evidence, the court finds no error in her determination that Lena's course of treatment was conservative. After all, the

---

[2] The ALJ later states in her decision that Lena's primary care provider prescribed her Xanax in 2018, but this appears to be a scrivener's error. (Compare A.R. 17-18, with id. at 19.)

Seventh Circuit has made clear that "[a]n ALJ is entitled to consider the course of a claimant's treatment." *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (citing 20 C.F.R. § 404.1529(c)(3)(v)); *see also Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (finding that ALJ properly considered conservative treatment in discounting subjective symptom statements). Thus, the ALJ did not err by considering Lena's conservative treatment.

Lena next argues that the ALJ failed to account for the significance of her panic attacks and difficulty presenting to work. (R. 13, Pl.'s Mem. at 11.) As Lena acknowledges, the ALJ addressed Lena's reports of frequent panic attacks and resulting "need[] to rest throughout the day a lot." (See id. (citing A.R. 17).) But the ALJ pointed out that Lena did not report anxiety symptoms or start anxiety treatment until October 2019, (A.R. 17-18)—nearly a year after her alleged disability onset date of November 28, 2018, (id. at 12). The ALJ was permitted to consider "the frequency or extent of the treatment sought" by Lena and whether such treatment was "comparable with the degree" of the subjective complaints reported. (R. 16, Gov't's Mem. at 6 (citing Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017)).) The ALJ did so here and concluded that Lena's subjective complaints were not consistent with the record evidence. (A.R. 17-19.) Accordingly, the court finds no error in the ALJ's symptom assessment.

## B. Opinion Evidence

Lena complains that the ALJ found her treating psychiatrist Dr. Miguel's May 2021 opinion "not persuasive." (R. 13, Pl.'s Mem. at 6-10.) An ALJ may not "defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must assess the persuasiveness of all medical opinions by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations the medical source presented and used, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to consider and explain how the opinion is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how he considered the medical source's specializations and relationship with the claimant and any other factors that tend to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

After treating Lena for about 10 months, Dr. Miguel completed a treating source statement in May 2021 diagnosing major depression and panic disorder/OCD[3] and endorsing extreme and marked limitations in 20 mental functioning areas, including interacting with others, CPP, and understanding and remembering

---

[3] Lena also represents that Dr. Miguel diagnosed her with PTSD, (R. 13, Pl.'s Mem. at 2), but the court could not find that diagnosis in his medical source statement, (A.R. 416). That said, Dr. Miguel's handwriting is difficult to read, and he does endorse Lena's recurrent and intrusive recollections of a traumatic experience as a source of marked distress. (A.R. 417.) Dr. Miguel also noted Lena's "claims of [PTSD] symptoms" in his opinion. (Id. at 420.) In any event, the ALJ found that Lena has a severe impairment of PTSD. (Id. at 15, 19 (noting that although Lena "reported symptoms of [PTSD] due to her mother having a medical crisis," she "is not being treated for such").)

detailed instructions. (A.R. 416-23.) Dr. Miguel noted that Lena is prescribed Zoloft, Xanax, and Klonopin for her mental impairments. (Id. at 416.) As a result, Dr. Miguel opined that Lena would miss more than four workdays per month and require assistance with managing disability benefits, in addition to experiencing hardship based on her limited mental abilities and aptitudes. (Id. at 418-21.)

The ALJ deemed Dr. Miguel's opinion "not persuasive" because it "appear[ed] to be largely based on [Lena's] subjective reports." (Id. at 21.) The ALJ explained that Dr. Miguel's treatment notes do not reflect the severity of symptoms Lena alleges, as evidenced in part by an absence of a diagnosis for panic disorder or OCD in those notes. (Id.) The ALJ also noted that while Dr. Miguel began treating Lena in July 2020, he saw her only "twice and then not again until December 2020." (Id. at 19.) Even then, Dr. Miguel recorded "very limited mental status findings." (Id. at 19, 21.) And when comparing Dr. Miguel's opinion with the objective evidence, Lena's treatment, and her daily activities, the ALJ found a lack of support for and consistency with Dr. Miguel's conclusions. (Id. at 21.) For example, the ALJ noted that Dr. Miguel did not treat Lena for the PTSD she reported or recommend therapy for OCD until June 2021, despite her complaints of "bad" OCD symptoms. (Id.)

In addition to the ALJ's reasons for finding Dr. Miguel's opinion not persuasive, the ALJ relied on the state agency psychological consultants' opinions— including that Lena suffered moderate limitations in interacting with others and CPP—which she deemed persuasive because "the overall record supports that [Lena] is capable of simple, routine tasks." (A.R. 20-21 (citing in part to lack of "significant

mental status exam findings" and "conservative care" with symptoms maintained by medications and therapy).) Given the ALJ's explanation, the court finds that she adequately considered the supportability and consistency of Dr. Miguel's opinion with the record evidence and supplied substantial evidence to support her analysis.

Nevertheless, Lena challenges the ALJ's opinion analysis, including by asserting that the ALJ erred when noting that Dr. Miguel's opinion "appears to be based largely on [Lena's] subjective reports." (R. 13, Pl.'s Mem. at 6.) But the government correctly notes that while a medical source need not "scrutinize a plaintiff's subjective allegations," the ALJ must do so, and here she determined that Lena's symptom statements were not consistent with the objective record evidence. (R. 16, Govt.'s Reply at 10.) The ALJ also observed that the record—including Dr. Miguel's own treatment notes indicating he primarily treated Lena with medication and reflecting limited mental status findings—does not support the extreme and marked limitations he endorsed. (See generally A.R. 17-21.) The ALJ did not err by considering the record evidence when evaluating the supportability and consistency of Dr. Miguel's opinion. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Lena also complains that the ALJ erroneously claimed that "OCD [only] appears in [Dr. Miguel's] notes one time" when in fact there appear to be four references to Lena's OCD in his notes. (R. 13, Pl.'s Mem. at 6-7.) But the ALJ acknowledged the difficulty she had deciphering Dr. Miguel's handwriting, and she not only discussed Dr. Miguel's diagnosis as to Lena's OCD but also determined that the impairment qualifies as "severe." (A.R. 15, 19, 21.) As such, there was no error

9

in failing to mention here every reference in the record to Lena's OCD. *See Thorlton v. King*, No. 24-1852, 2025 WL 453122, at *1 (7th Cir. Feb. 11, 2025) (noting that judicial review "proceeds with a light touch—not holding ALJs to an overly demanding evidentiary standard and in turn reenforcing that claimants bear the affirmative burden of proving their disability").

Having said that, some reasons supplied by the ALJ for finding Dr. Miguel's opinion non-persuasive require a closer scrutiny. First, the ALJ referred to Dr. Miguel's determination that Lena did not require "more intensive treatment such as a partial hospitalization program or intensive outpatient treatment." (A.R. 21.) Although the ALJ cannot draw a negative inference from the lack of such treatment without considering the record as a whole, *see Kelly*, 2014 WL 4388546, at *6, here the ALJ did just that, as set forth above. Next, the ALJ relied on Lena's ability to apply for disability and care for her "small child" to discount the persuasiveness of Dr. Miguel's opinion. (A.R. 21.) As Lena points out, denial of disability based on the ability of an applicant with alleged severe mental deficits to apply for such benefits "defies any logical bridge as virtually no one would be found disabled." (R. 13, Pl.'s Mem. at 7.) And the ALJ did not explain how Lena's ability to help care for her child translates to her ability to sustain full-time, competitive work. (A.R. 16.) Regardless, there is no indication that the ALJ equated these activities with an ability to work. The ALJ undertook a comprehensive review of the evidence and supported her opinion analysis with substantial evidence. As such, the record does not compel a

remand. *See Thorlton*, 2025 WL 453122, at *3 (finding that a "shortcoming" in confronting evidence does not require reversal).

## C.    RFC

Finally, Lena complains that the ALJ failed to account for her moderate CPP or social interaction limitations when crafting her RFC and posing a hypothetical to the VE. (R. 13, Pl.'s Mem. at 12-14.) An RFC measures the tasks a person can perform given his limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ must incorporate a claimant's limitations, including those that are not severe, when developing the RFC, and may not simply dismiss a line of evidence that is contrary to the ruling. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). An ALJ's RFC analysis must "say enough to enable review of whether the ALJ considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), and provide a "logical bridge" between the evidence and the conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

The ALJ here considered Lena's reports and other evidence of record and assessed moderate CPP and social interaction limitations. (A.R. 15-16.) When crafting the RFC and hypothetical, the ALJ accounted for the "totality of" Lena's restrictions, including those relating to CPP and social interaction deficits, by limiting Lena to "simple, routine tasks involving simple work-related decisions that do not require a fast production rate pace" and "occasional interaction with coworkers,

11

supervisors, and the public." (Id. at 16-17.) In assessing these restrictions, the ALJ pointed to the "overall record," emphasizing the lack of mental status exam findings and conservative treatment with medication and, eventually, therapy. (Id. at 20.)

The ALJ also relied on the opinions of the state agency psychological consultants, which she deemed "persuasive." (Id.) At the initial level, the consultant found that Lena could "carry out 1-2 step instructions/tasks [] to sustain efforts for a normal work period," "make simple work decisions," and "interact and communicate with others sufficiently in a work setting with reduced contact with the public." (Id.) Upon reconsideration, the consultant determined that Lena could "attend/concentrate for extended periods with simple activities; make reasonable judgments while engaging simple, routine tasks; [and] interact with the general public, co-workers and supervisors on an incidental basis." (Id.)

Lena argues that the ALJ's assessed limitations are not sufficient to account for her CPP and social interaction difficulties. (R. 13, Pl.'s Mem. at 12-14.) For support, she cites to her own symptom statements and Dr. Miguel's opinion and treatment notes recording poor concentration, focus, and memory and an inability to work with others. (Id.) But as discussed, the ALJ sufficiently explained why she discounted Lena's symptom statements and found Dr. Miguel's opinions non-persuasive.

Further, Lena fails to "identify the type of functional restriction" she believes is necessary, which is significant because she bears the burden of showing that the evidence required "a finding of greater functional loss." (R. 16, Govt.'s Mem. at 14-

15.)  Thus, "[e]ven if the ALJ's RFC were flawed, any error was harmless because [i]t is unclear what kinds of work restrictions might address [Lena's] limitations."  (Id. (citing *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021) (internal quotations omitted)).)  Lena's challenges to the RFC and hypothetical therefore fall short of requiring a remand.

## Conclusion

For the foregoing reasons, Lena's request for remand is denied, and the Commissioner's decision is affirmed.

ENTER:

_____
**Young B. Kim**
**United States Magistrate**